UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| SANDRA J. HAMILTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> ) <br> ALTSON WILKES SOCIETY, ) <br> ) <br> Defendant. ) <br>_____ ) | Civil Action No.: 3:07-cv-3404-JFA-TER <br><br><br><br>**REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

In this employment action, Plaintiff alleges discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Plaintiff filed this case pro se, but subsequently obtained counsel. Presently pending before the Court is Defendant's Motion for Summary Judgment (Document # 35). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because Defendant's Motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

### Plaintiff's Multiple Sclerosis

In 1988, Plaintiff was diagnosed with Multiple Sclerosis (MS). Plaintiff Dep. 18-19, 83-94. Plaintiff has the potential to suffer "flare-ups" of her MS, triggered by extreme heat, which result in exhaustion, fatigue, and lack of balance. Id. at 83-84. Otherwise, Plaintiff's MS does not impair her in any way. Id. at 84-85. In the two decades since Plaintiff was diagnosed with MS, she has had just one flare-up, which lasted a couple of weeks. Id. at 83-84. When she is not experiencing a flare-up,

Plaintiff is able to carry out her daily life activities, including job duties, as long as she is not in extreme heat. Id. at 85.

### Plaintiff's Application and Interview with Alston Wilkes

In 2005, Plaintiff applied for a position with Alston Wilkes Society (Alston Wilkes). Id. at 41-42. Plaintiff was referred to Alston Wilkes by the South Carolina Vocational Rehabilitation agency, from which she received services because of her MS. Id. at 27, 27, 36, 41-44. Alston Wilkes is a nonprofit organization that works to transition offenders back into society by, among other things, assisting them to find employment. Id. at 64-65. Plaintiff interviewed with Saagu Zeleke, the Facility Director, on April 13, 2005, for the position of Employment Services Coordinator. Id. at 42-45. During the interview, Plaintiff disclosed to Zeleke that she had MS and could not be in extreme heat for a long period of time. Id. at 45-46. She also completed and signed an employee information sheet on which she represented that she had a disability, but did not provide a written response to the question of "Special accommodations or limited activities." Id. at 48-50; Ex. 8 to Plaintiff Dep. Plaintiff orally requested that she be allowed periodic medical leave. Id. at 88.

### Job Responsibilities of Employment Services Coordinator

Plaintiff discussed the Employment Services Coordinator job with Zeleke and Zeleke gave Plaintiff a job description for the Employment Services Coordinator position. Id. at 47, 130. Plaintiff had an opportunity to review the job description and signed it. Id. at 54-55. The job description listed the essential functions of the job, including "coordinating and monitoring each resident's job search activities and job maintenance behaviors." Id.; Ex. 9 to Plaintiff Dep. The job description also set forth the following, specific responsibilities:

> The Employment Services Coordinator will verify employment, clarify the resident's legal status with the employer, and arrange for the employer to sign the appropriate Community Employment Agreement . . . . The Employment Services Coordinator will ensure that on-sites are completed on all residents as specified in Policy H1311.

Id.

In transitioning offenders back into society, Alston Wilkes provides services under contracts with the Federal Bureau of Prisons (BOP). Id. at 65; Ex. 14 to Plaintiff Dep. The BOP's Statement of Work (SOW) sets forth the contractual performance requirements for Alston Wilkes. Id. at 66; Ex. 14 to Plaintiff Dep. Among Alston Wilkes' requirements, as mandated by the SOW, is that "[a]ll offenders are expected to be employed full-time . . . within 15 calendar days from completion of the facility orientation program . . . ." Ex. 14 to Plaintiff Dep., p. 63. Further, for "each job an offender acquires, the contractor [Alston Wilkes] shall verify a random, on-site visit during the first seven calendar days, and document the visit in case notes to include date and the title of the person contacted." Id. at p. 65.

### Plaintiff's Hire by Alston Wilkes

Plaintiff's application was forwarded to Alston Wilkes' Executive Director, Ann Walker. Plaintiff Dep. 54. Zeleke recommended Plaintiff's hire, but the decision was made by Walker and Katrina Dowis, Alston Wilkes' program Director. Zeleke Dep. 62. Plaintiff was offered the position of Employment Services Coordinator on the same day as her interview. Plaintiff Dep. 52. Plaintiff recalled that Walker and Dowis were both aware of her disability and still hired her for the position. Id. at 53.

Plaintiff executed a written employee agreement, which was also signed by Walker, Dowis, and Zeleke. Id. at 55-56; Ex. 10 to Plaintiff Dep. The agreement included that the first six months of Plaintiff's employment would be considered an introductory period. Id. The introductory period was

-3-

a probationary period during which Plaintiff was not entitled to benefits, including sick leave. Plaintiff Dep. at 101-02; Ex. 11 to Plaintiff Dep.

### Plaintiff's Work Performance

Plaintiff began work with Alston Wilkes on April 15, 2005. Plaintiff Dep. 57. She worked out of Alston Wilkes's Columbia office, so every day she drove to Columbia from her home in Lancaster, South Carolina. Id. at 57-58. Plaintiff serviced Columbia, Orangeburg, Augusta, and Barnwell as the only Employment Services Coordinator for the area. Id. at 67. Plaintiff confirmed that her duties included finding suitable employment for offenders and conducting "employment checks, verifications." Id. Plaintiff had to complete a verification form when she carried out the on-site visits. Id. at 82; Ex. 15 to Plaintiff Dep. According to Plaintiff, her job required that she spend 30 to 35 percent of her time outside of the office doing verifications. Id. at 79. In May, June, and July of 2005, Plaintiff conducted on-site visits in Columbia. Id. at 77. In August and September of 2005, Plaintiff was required to travel to Barnwell, Orangeburg, and Augusta. Id. at 77-78.

### Audit Conducted by the BOP

The BOP conducts audits of Alston Wilkes. Id. at 94. During a BOP audit, it was discovered that Plaintiff was not making some on-site visits. Id. A BOP official communicated to Plaintiff that she needed to make the on-site visits. Id. at 73-75, 94-95. After the audit, the BOP sent a written report to Alston Wilkes. Id. at 100; Ex. 24 to Plaintiff Dep. The report specifically noted,

> Chapter 10 of the amended SOW addresses the government's requirements for monitoring employment. The contractor shall ensure on-site visits with employers are conducted within seven days of the inmates' obtaining employment. Two of five files did not meet the SOW deadline. In an effort to avoid unnecessary trips to employment sites, the Employment Specialist may need to call ahead and arrange for an appointment with the resident's supervisor.

Ex. 24, p. 4, to Plaintiff's Dep. Plaintiff is the Employment Specialist referred to in the report.

Plaintiff Dep. 101. Plaintiff testified she was not aware that she had to conduct on-site employment checks for home confinement clients until the audit was conducted. Id. at 71-73. It was her original understanding that she would conduct on-site visits only for residents in the halfway house in Columbia, not for home confinement clients that lived in Augusta, Barnwell, and Orangeburg. Id. The audit report notes that weekly on-site visits to the place of employment are required for clients on home confinement, but some of the visits were not conducted "due to a previous misunderstanding with the new Employment Specialist." Ex. 24 to Plaintiff Dep.

### Plaintiff's Absences and Termination

From mid-April until late-September 2005, Plaintiff was absent from work 16 days and worked only two hours on another day. Her absences included every day during the period September 15-23, 2005. Ex. 18 to Plaintiff Dep. (documenting Plaintiff did not work on May 10, 30, June 3, 6, 7, 8, July 29, August 11, September 15-23, 2005, and worked less than two hours on September 26, 2005). See also Plaintiff Dep. 91-92 (admitting that Ex. 18 accurately reflected days Plaintiff worked).

After Plaintiff had been out of work for an extensive period of time in September, Executive Director Walker and Program Director Dowis telephoned Plaintiff and informed her that Alston Wilkes was terminating her employment. Id. at 104. Plaintiff testified that Walker told her that her employment was being terminated because Plaintiff was "out sick for an extensive length of time and that they needed someone there who could perform the job duty." Id. at 104-05. Plaintiff believes that Walker made the decision to terminate her. Id. at 109. Plaintiff was terminated on September 27, 2005. Id. at 148.

In December 2005, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SHAC) and the Equal Employment Opportunity Commission (EEOC). Ex. 3 to Plaintiff Dep. In her charge, Plaintiff claimed that she was discriminated against on the basis of a

disability – being "denied a reasonable accommodation and discharged on September 27, 2005." Id. In the written information Plaintiff submitted in support of her charge, Plaintiff represented that Walker and Dowis were the persons who had allegedly harmed her. Ex. 4, p. 4, to Plaintiff Dep. After investigating Plaintiff's allegations, SHAC issued a "no cause" determination. Ex. 5 to Plaintiff Dep. The EEOC adopted SHAC's findings. Ex. 6 to Plaintiff Dep.

### III.  STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56©, FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56©, except the mere pleadings themselves).  To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322.  See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.    DISCUSSION

Plaintiff alleges that Alston Wilkes discriminated against her because of her disability in violation of the ADA by failing to accommodate her and discharging her.  Defendant asserts that Plaintiff is not disabled under the ADA, cannot establish a prima facie case of discrimination, and cannot not show that the legitimate, nondiscriminatory reason for her termination was pretextual. Defendant also argues that Plaintiff never requested an accommodation that she did not receive.

The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases are also applicable in cases brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." Ennis v. Nat'l Assoc. Of Business and Educ. Radio, 53 F.3d 55, 58 (4th Cir.1995). To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) she has a disability; (2) that she is a qualified individual; and (3) that the

employer discriminated against her because of her disability. Martinson v. Kinney Shoe Corp., 104 F.3d 683,686 (4th Cir.1997).

The ADA defines "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (B) being regarded as having such an impairment, or © having a record of such an impairment. 42 U.S.C. § 12102(2); Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702-03 (4th Cir.2001). Plaintiff proceeds on her claims only under the first prong, arguing that she has a physical impairment that substantially limits one or more major life activities.[1]

The question of whether a plaintiff is disabled under the ADA, "and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." Rose v. Home Depot U.S.A., Inc., 186 F.Supp.2d 595 (D.Md.2002) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir.2001) (Rehabilitation Act case)). In determining whether an impairment is substantially limiting, courts consider the "nature and severity of the impairment," the "duration or expected

---

[1] Plaintiff does not argue that either of the other provisions of 42 U.S.C. §12102(2) are applicable. Although Plaintiff does not argue that Defendant regarded her as having a physical impairment that substantially limits a major life activity, the undersigned notes briefly that such a claim would fail because Plaintiff cannot establish that she can "with or without reasonable accommodation, . . . perform the essential functions of the employment position." 42 U.S.C. § 12111(8); Tyndall v. National Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (explaining that a plaintiff must show she can "perform the essential functions of her job") (internal citation and quotations omitted). There is no dispute that on-site job visits account for a substantial portion of the duties of the Employment Coordinator position and are an essential function of the Employment Services Coordinator. Plaintiff has failed to show that she can perform on-site visits. The record is devoid of what accommodations would be necessary to render Plaintiff capable of performing the essential functions of the job. The only accommodation Plaintiff appears to suggest is that someone else conduct the visits for her when she cannot. Plaintiff fails to show that such an accommodation is reasonable. An employer is not required to change a position by eliminating the job's essential nature. Myers v. Hose, 50 F.3d 278, 282 n.2 (4th Cir. 1995) (declaring that the employer "cannot reasonably be expected to . . . adjust the specifications of [the plaintiff's] particular post" to provide an accommodation under the ADA).

duration of the impairment," and the "permanent or long term impact" of the impairment. 29 C.F.R. § 1630.2(j)(2);[2] see also Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-97 (2002). These factors indicate that a temporary impairment will generally not qualify as a disability under the ADA. See, e.g., 29 C.F.R. § 1630.2(j), app. at 353. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time.

Not all those with a physical impairment are covered by the ADA. Rose v. Home Depot USA, Inc., 186 F.Supp.2d 595, 611 (D.Md. 2002). The Fourth Circuit has elaborated on this notion by stating that the ADA,

> "assure[s] that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." ... Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize this lofty objective.

Halperin v. Abacus Technology Corp., 128 F.3d 191, 200 (4th Cir. 1997) (internal citation omitted), overruled on other grounds by Baird v. Rose, 192 F.3d 462 (4th Cir. 1999); see also Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-69 (4th Cir. 2002). As noted by the Rose court, "[t]his concept includes those with lifetime impairments with intermittent manifestations that flare up." Rose, 186 F.Supp.2d at 612. To "hold that a person is disabled whenever that individual suffers from an occasional manifestation of an illness would expand the contours of the ADA beyond all bounds." E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001) (holding that epileptic plaintiff did not suffer a disability under the ADA where seizures were only occasional manifestations of her epilepsy). See also Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir.1997) (determining that acute

---

[2] EEOC regulations can be used as guidance in interpreting the ADA. See Sutton v. United Airlines, Inc., 527 U.S. 471, 479-80. (1999).

episodic depression that has resulted in a five week absence and four months of work restrictions was not substantially limiting even if the underlying condition will be life long); Felix v. Sun Microsystems, Inc, C.A.. No. JFM-03-1204, 2004 WL 911303, *10 (D.Md. April 12, 2004) (holding that plaintiff who suffered from alcoholism was not substantially limited in a major life activity where he was impaired only when he would binge drink, which lasted three to four days every two to three months). Plaintiff argues that her MS is permanent. However, as shown below, any impairment arising from her MS is simply temporary.

Plaintiff testified that her MS ordinarily does not impair her in any way. Plaintiff Dep. 85. When she is not experiencing a "flare-up," she is able to carry out her daily life activities and perform her job duties. Id. When Plaintiff experiences a flare-up, triggered by exposure to extreme heat, she suffers from exhaustion and lack of coordination. Id. at 84. However, during the two decades she has suffered from MS, the only flare-up she has ever experienced occurred while she was working for Alston Wilkes in 2005 and lasted a couple of weeks. Id. at 83-84. A "temporary impairment . . . will generally not qualify as a disability under the ADA." Pollard, 281 F.3d at 468-69 (holding that a nine-month absence was "insufficient to demonstrate that [the plaintiff] had a permanent or long-term impairment that significantly restricted a major life activity."); Halperin, 128 F.3d at 199 ("[T]he term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work . . . .") (internal citation omitted). In light of Plaintiff's testimony that she has been impaired by her MS for only a couple of weeks over the course of twenty years, Plaintiff's impairment is simply temporary.

Furthermore, Plaintiff cannot show that she is impaired in a major life activity. First, as already stated, Plaintiff is ordinarily not impaired in any way. The only limitation resulting from Plaintiff's MS is the need to stay out of extreme heat. Plaintiff's need to make adjustments in her daily routine

to avoid extreme heat does not render her disabled under the ADA. See Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1218 (10 Cir. 2007) (affirming the district court's finding that plaintiff was not "disabled" as a matter of law even though she had Multiple Sclerosis and had to "make some adjustments in her daily routine"). Plaintiff argues generally in her Response to Defendant's Motion that she is limited in the major life activities of driving, using her limbs, and walking with balance. However, the record does not support this contention. Plaintiff is able to drive, cook, be an active member of her church, and bowl weekly in a bowling league with a 36-week season. Plaintiff Dep. 12-13. Plaintiff also testified she is able to perform her job duties and can perform any job as long as she is not in extreme heat. Id. at 85. Plaintiff drove from her home in Lancaster, South Carolina to her office in Columbia, South Carolina every day. There is no evidence in the record to support her contention that she was substantially impaired in any major life activity.

To the extent Plaintiff argues that she was impaired in the major life activity of working, the record fails to support such a claim. While the Supreme Court has expressly declined to resolve the question of whether working is a major life activity under the ADA, it has cautioned that even "assuming that working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs', rather than a specific job." Toyota Motor Mfg., 534 U.S. at 200; see Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999) ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.").

Plaintiff has not offered evidence of her "inability to work in a 'broad range of jobs.'" Toyota Motor Mfg., 534 U.S. at 200. Plaintiff testified in her deposition that she is able to perform any job as long as she is not in extreme heat. Plaintiff Dep. 85. Plaintiff's physician opined that Plaintiff "should be able to perform most kinds of employment," except "it is best if she not work in temperature

extremes" or "perform unusually strenuous physical exertion" or "work on ladders, catwalks, or unusually dangerous circumstances." Ex. 17 to Plaintiff Dep. The record does not support a finding that Plaintiff is unable to work in a broad range of jobs. Therefore, she is not substantially limited in working, assuming such is considered a major life activity. Toyota Motor Mfg., 534 U.S. at 200; Frazier v. Simmons, 90 F.Supp.2d 1221, 1225 (D. Kan. 2000) (holding that although the plaintiff's Multiple Sclerosis "is an impairment," it "does not preclude him from performing a broad class of jobs;" therefore, it "does not constitute a disability within the meaning of the ADA").

Plaintiff has failed to produce sufficient evidence to show she suffers from an impairment that substantially limits one or more of her major life activities and, thus, fails to show she is disabled within the meaning of the ADA. Therefore, Plaintiff fails to make a prima facie showing that Defendant violated the ADA. Accordingly, the court need not address Defendant's additional arguments. It is recommended that summary judgment be granted on Plaintiff's claims for Plaintiff's failure to show she is disabled as defined by the ADA.

## V.     CONCLUSION

For the reasons stated above, it is recommended that Defendant's Motion for Summary Judgment (Document # 35) be granted and this case dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 24, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).